# FOR PUBLICATION

FILED & ENTERED

JAN 22 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – Santa Ana Division

| | |
|---|---|
| In re<br><br>RANDALL WILLIAM BLANCHARD,<br><br>    Debtor. | Case No. 8:14-bk-14105-SC<br><br>Chapter 11<br><br>Adversary No. 8:15-ap-01394-SC |
| INTEGRATED FINANCIAL ASSOCIATES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>RANDALL WILLIAM BLANCHARD, FOLKSTONE PARTNERS, LP, MERYTON MANAGEMENT, INC., CALIFORNIA REPUBLIC BANK, RICHARD M. PACHULSKI, as Chapter 11 Trustee/Plan Administrator, and CC BOREGO, LLC,<br><br>    Defendants. | **ORDER DISMISSING ADVERSARY PROCEEDING**<br><br>Date: 12/17/2015<br>Time: 9:00 a.m.<br>Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

On December 17, 2015, the Court conducted a hearing on three motions to dismiss the complaint in the above adversary proceeding. The Court heard argument on the Motion to Dismiss Second Claim for Relief Pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012 and Federal Rule of Civil Procedure ("Rule") 12(b)(6) [Adv. Dk. 13] ("Trustee's Motion to Dismiss") filed by Chapter 11 Trustee/Plan Administrator, Richard M. Pachulski ("Trustee"); the Motion to Dismiss Fourth Claim for Relief [Adv. Dk. 22] ("CRB's Motion to Dismiss") filed by California Republic Bank

("CRB"); and the Motion to Dismiss Fifth Claim for Relief [Adv. Dk. 24] ("CC Borego's

Motion to Dismiss") filed by CC Borego LLC ("CC Borego") who also joined in the

Trustee's Motion to Dismiss [*see* Joinder, Adv. Dk. 25] (collectively, "Motions to

Dismiss").[1]  Integrated Financial Associates, Inc. ("IFA") filed oppositions to: the

Trustee's Motion to Dismiss [Adv. Dk. 18], CRB's Motion to Dismiss [Adv. Dk. 36], and

CC Borego's Motion to Dismiss [Adv. Dk. 35], and replies were filed by the Trustee [Adv.

Dk. 21], CRB [Adv. Dk. 41], and CC Borego [Adv. Dk. 42].

Jeremy Richards, Esq. of Pachulski, Stang, Ziehl & Jones LLP appeared on behalf

of the Trustee. Candace Carlyon, Esq. of Morris Polich & Purdy, LLP appeared on behalf

of IFA.  Vicki Schennum, Esq. of the Law Offices of Michael G. Spector appeared on

behalf of CRB. David Fink, Esq. and Eric May, Esq. of Kelley Drye & Warren LLP

appeared on behalf of CC Borego.

## I.    Introduction

At the hearing on December 17, 2015, the Court heard oral argument on whether

the Court's previous order dismissing adversary proceeding number 8:14-ap-01242-SC

for lack of subject matter jurisdiction precluded IFA's filing of a subsequent adversary

proceeding (the instant adversary proceeding), which asserted the same jurisdictional

basis as the first adversary complaint. Prior to the December 17, 2015 hearing, the Court

published a pre-hearing tentative stating that it believed the second complaint was

barred by the Dismissal Order (defined *infra*), and the Court gave notice of its intent to

dismiss the entire adversary proceeding based upon preclusion principles. The focus of

the hearing was on the preclusive effect of the Dismissal Order, and the parties were

given an opportunity to address the Court's tentative. Trustee's counsel, Mr. Richards,

suggested that perhaps law of the case applied, but nonetheless agreed with the Court

that some preclusion principle applied to the Dismissal Order. CC Borego's counsel, who

raised a preclusion issue in their motion to dismiss, agreed that the Dismissal Order was

---

[1] Unless otherwise indicated, references to "[Adv. Dk. X]" are to the docket in adversary proceeding No.
8:15-ap-01394-SC, and references to "[Bk. Dk. X]" refer to the docket in the main bankruptcy case.

preclusive. CRB also raised a judicial estoppel issue in its motion. IFA's counsel, Ms. Carlyon, on the other hand, expressed her incredulity that the Dismissal Order was a final, appealable order. All parties were given the opportunity to address any other grounds or bases for dismissal, but none were raised at the hearing.  The Court heard oral argument by the parties and took the matter under submission.

Based upon the oral argument and the record as a whole, and for the reasons set forth below, the Court DISMISSES this adversary proceeding without leave to amend based upon issue preclusion. This dismissal is without prejudice to IFA filing an administrative claim in this bankruptcy case (which IFA has already done, *see* [Bk. Dk. 649]).  The Court writes this memorandum decision to explain its reasoning.

## II.    Background

Randall William Blanchard ("Debtor" or "Blanchard") filed an individual chapter 11 on July 1, 2014, and Richard M. Pachulski was appointed as chapter 11 trustee on January 12, 2015. Order [Bk. Dk. 262]. The Trustee's Fifth Amended Plan of Reorganization [Bk. Dk. 598] ("Plan") was confirmed, as amended, on December 9, 2015. Confirmation Order [Bk. Dk. 637].

### A.    The First Adversary Proceeding

On August 29, 2014, IFA commenced an adversary proceeding, naming the Debtor and various non-debtor companies and individuals as defendants. *See* Adversary Complaint [8:14-ap-01242-SC Adv. Dk. 1]. IFA amended its complaint on January 7, 2015 [8:14-ap-01242-SC Adv. Dk. 45] ("First Complaint").

The First Complaint contained causes of action against the Debtor and various non-debtor parties, including Folkstone Partners LP ("Folkstone"), Sandcastle Victorville LLC ("SCV"), Sand Castle Nuevo LLC ("SCN"), 14374 Borego Road, LLC ("Borego Road"), and CC Borego. The First Claim for Relief was for "Declaration of Validity of Plaintiff's Interests in the Proceeds of the Victorville Property"; the Second Claim for Relief was for fraudulent transfer under California's Uniform Fraudulent

Transfer Act ("CUFTA");[2] the Third Claim for Relief was for an accounting; the Fourth Claim for Relief was for intentional interference with contract; the Fifth Claim for Relief was for breach of contract (against SCV only); and the Sixth Claim for Relief was for unjust enrichment.

The gist of the First Complaint was that Blanchard was the recipient of an approximate $950,000.00 post-petition fraudulent transfer from SCV at a time when IFA was a creditor of SCV. The First Complaint alleged that IFA was entitled to "avoid" and recover approximately $950,000.00 from Blanchard pursuant to CUFTA. *See* First Complaint, ¶47. The First Complaint also made a few cryptic and non-understandable references to Bankruptcy Rule 7001 and Bankruptcy Code §§ 105 and 523,[3] which were, according to the Plaintiff's counsel, not well-pled.[4] The First Complaint characterized these causes of action as being both core and non-core claims. *See* First Complaint, ¶¶7,8.

On February 13, 2015, SCV, SCN, and Folkstone filed a motion to dismiss the First Complaint [8:14-ap-01242-SC Adv. Dk. 67], which was joined by the Trustee [*see* Joinder 8:14-ap-01242-SC Adv. Dk. 68; 72], and which came on for hearing on April 2, 2015.

The Court took significant time at the April 2, 2015 hearing to provide IFA's counsel, Ms. Carlyon, several opportunities to discuss and explain the underlying factual and legal bases for the First Complaint.  In essence, Ms. Carlyon stated that IFA was asserting that Blanchard owed IFA approximately $950,000.00 based upon his alleged

---

[2] As of January 1, 2016, California's Uniform Fraudulent Transfer Act has been renamed the California Uniform Voidable Transactions Act. *See* Cal. Civ. Code § 3439, *et seq.*

[3] Unless otherwise indicated, references to "sections" or "chapters" refer to the Bankruptcy Code.

[4] For example, the Second Claim for Relief in the First Complaint alleged that IFA was "entitled to relief for Fraudulent Transfer under California Code § 3934.04-3934.07 [sic], and is thus entitled to relief under 11 U.S.C. § 523(2)(a) [sic] to the extent that any of IFA's claim [sic] pursuant to the 2008 Victorville agreement would otherwise be dischargeable in this Bankruptcy." First Complaint, ¶46. At the April 2, 2015 hearing, IFA's counsel, Ms. Carlyon, explained that the Second Claim for Relief was intended to be an "objection to discharge"; however, Ms. Carlyon admitted that this aspect of the First Complaint was not well-pled. Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 9, lines 12-13] (Ms. Carlyon: "It was meant as an objection to discharge but it is not well pled.").

post-petition receipt of a fraudulent transfer. Further, Ms. Carlyon explained that IFA was seeking to "undo the post-petition transfer." Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 36, lines 5-6]. Ms. Carlyon was unable to identify a single federal statutory basis (either in the Bankruptcy Code or elsewhere) upon which IFA *had standing* to invoke the jurisdiction of the bankruptcy court to "undo" the alleged post-petition transfer to Blanchard or to pursue related actions against the non-debtor defendants.

Mr. Richards, counsel to the Trustee, pointed out that IFA already had an allowed pre-petition unsecured claim for approximately $5.6 million, which subsumed the $950,000.00 amount. Mr. Richards argued that the First Complaint was IFA's attempt to elevate an approximate $950,000.00 portion of that pre-petition unsecured claim to the status of an administrative claim. Mr. Richards further argued that IFA's adversary complaint was, in effect, seeking an *in rem* remedy[5] against the estate, which was improper. The Trustee urged the Court to simply treat the First Complaint as the assertion of an administrative claim and to dismiss it on its underlying merits.

The Court, sensitive to the differing procedures between Bankruptcy Rule 7001, *et seq.*, which governs adversary proceedings, and Bankruptcy Rule 3001, *et seq.*, which governs claims, denied the Trustee's request to treat the adversary proceeding as an administrative claim. Rather, the Court dismissed the adversary proceeding based upon the Court's lack of subject matter jurisdiction over IFA's claims against the non-debtor defendants. Those claims arose under state law, and IFA had failed to establish a sufficient connection between those claims against non-debtor defendants and

---

[5] Mr. Richards's argument appears at docket number 108 in the 8:14-ap-01242-SC docket, beginning on page 29, line 21 through page 31, line 5. In summarizing IFA's complaint, Mr. Richards pointed out that IFA was essentially seeking an *in rem* remedy against Blanchard's estate by using California's fraudulent transfer laws. Mr. Richards believed that this was improper for several reasons. First, Mr. Richards disputes that IFA was a creditor of SCV, but even assuming *arguendo* that such obligation existed, Mr. Richards argued that IFA only held a pre-petition right to payment—a "classic unsecured proof of claim." Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 31, line 12]. In short, Mr. Richards argued that simply because SCV may have an *in rem* remedy against Blanchard's estate does not mean that IFA may use CUFTA to somehow assert an *in rem* remedy against Blanchard by virtue of IFA's purported status as a creditor of SCV.

Blanchard's bankruptcy estate. With respect to IFA's assertion of a post-petition right to payment against Blanchard, the Court left open the possibility for IFA to file an administrative claim.

Prior to the dismissal, the Court gave Ms. Carlyon an opportunity to be heard on her arguments that the Court should exercise "related to" jurisdiction over the claims asserted in the First Complaint by IFA against the non-debtor defendants. Ms. Carlyon asserted that there existed a "clear nexus" between IFA's claims and the bankruptcy estate such that the Court could exercise "related to" jurisdiction over the non-debtor defendants. Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 10, lines 22-23].

The Court disagreed, noting that IFA's claims against non-debtor defendants might be cognizable in state court, but that "the only claim that [IFA has] that should be in front of [the bankruptcy court] is the claim against Mr. Blanchard." Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 34, lines 21-25]. Mindful that IFA already had an allowed pre-petition proof of claim for approximately $5.6 million, which subsumed the $950,000.00 sought against Blanchard in the First Complaint, the Court found that the First Complaint was "superfluous."  Hearing Transcript [8:14-ap-01242-SC Dk. 108, page 34, lines 21-25] ("Other than that, it's superfluous with respect to the complaint that [IFA has] filed."). The Court determined that with respect to IFA's claims against the non-debtor defendants, there existed an insufficient connection to the bankruptcy estate, such that the Court lacked "related to" jurisdiction over those claims. The Court did not adjudicate the underlying merits of IFA's claims against the non-debtor defendants or against the Debtor. Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 34, line 21 – page 35, line 2] ("It does not mean [IFA doesn't] have good causes of action against these other defendants but they're not my defendants. They're not important for the administration of this estate at this point."). Rather, the Court dismissed the First Complaint without leave to amend, based upon futility, stating as follows:

> There's no leave. Let me just say for the record that there's no . . . way that
> this complaint could be amended to resolve the difficulties that the
> Plaintiff would have in securing jurisdiction and standing. And mindful
> that with respect to all the Defendants in this action, except for Mr.
> Blanchard, the Plaintiff Integrated Financial Associates, Inc., may sue
> anybody they want, as long as they don't violate the automatic stay.

Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 106, page 6, lines 19]. While the Court made it clear that Blanchard would not be absolved for any alleged post-petition acts or obligations, the Court told Ms. Carlyon that the filing of an adversary proceeding against Blanchard (alleging state law causes of action and listing multiple non-debtor defendants) was not "the proper mechanism." *Id.* at page 36, lines 7-8. The Court left open the possibility that IFA could file an administrative claim against Blanchard's estate.

When asked by IFA's counsel to clarify the Court's ruling, the Court specifically stated that the dismissal was "without prejudice to bringing the action in a different forum." Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 106, page 5, lines 12-16]. The Court instructed counsel for CC Borego to upload an order stating that the motion is granted and the adversary proceeding is dismissed without prejudice. Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 106, page 7, lines 1-5]. By including "without prejudice" in the language of the order dismissing the First Complaint, the Court intended to make it clear that IFA was free to sue whomever they please in whatever forum they saw fit. The "without prejudice" language in the order did not upend any of the Court's other specific findings made on the record at the April 2, 2015 hearing that it lacked "related to" jurisdiction over IFA's claims against non-debtor defendants or that amendment of the adversary complaint would be futile.

The Court entered an order dismissing the adversary proceeding on April 10, 2015 [8:14-ap-01242-SC Adv. Dk. 97] ("Dismissal Order"). The Dismissal Order states that "the matter is dismissed in its entirety as to all defendants without prejudice." Dismissal Order at page 2, lines 8-9. The Court intended the Dismissal Order to be (and it was) final. It was never appealed, and no Rule 59 or 60 motions were ever filed. No

motion to clarify the Dismissal Order was ever filed. The Court closed the adversary

proceeding a month later, on May 21, 2015. *See* Docket entry closing case [8:14-ap-

01242-SC Adv. Dk. 103]. No motion to reopen the closed adversary proceeding has ever

been filed.

**B.    The Motion for Relief from Stay**

On August 11, 2015, four months after the hearing on the Motion to Dismiss First

Complaint, IFA filed a motion for relief from the automatic stay [Bk. Dk. 492] ("Motion

for Relief") for the purpose of suing the Debtor and other non-debtor defendants in state

court. The Motion for Relief came on for hearing on September 17, 2015, immediately

following the hearing on confirmation of the Plan.[6]

What is disturbing about the September 17, 2015 record is that it contains several

instances where IFA's counsel, Ms. Carlyon, made inaccurate and misleading

representations to the Court. For example, IFA's counsel represented that the Court had

previously *directed* IFA to return to state court to obtain a judgment against SCV.

Hearing Transcript 9/17/2015 [Bk. Dk. 586, page 143, lines 3-5] (Ms. Carlyon: "This

court has already indicated you don't want to handle this case. *You told me to go to state

court*.") (emphasis added).  This representation by Ms. Carlyon is incorrect and

misleading because the Court never *advised* or *directed* IFA to file suit in any court.

Rather, the Court simply dismissed the First Complaint because the state law causes of

action against non-debtor defendants were not properly brought before *this* Court—a

federal court with limited jurisdiction. Mr. Richards (to his credit) attempted to correct

the record by pointing out that the Court never directed IFA to return to state court:

> I've looked at the transcript, and I can't find anywhere where anyone said
> go get a default judgment in Nevada and then bring a lawsuit in San
> Bernardino County and then come back and assert your administrative

---

[6] The Court confirmed the Plan on September 17, 2015, after a recess and upon IFA's withdrawal of their objections to the Plan.  Hearing Transcript 9/17/2015 at 3:26 p.m. The Plan provided for a $950,000.00 disputed claim reserve specifically reserved for IFA and against which IFA was to file an administrative claim. The Court notes that on January 4, 2016, IFA filed an "Application for Payment of Post-Petition/Administrative Claim" [Bk. Dk. 649], which is—as of the drafting of this decision—scheduled for hearing.

claim against the estate. . . . I'll get to the record in a minute, but I think the Court was pretty clear, "You assert your administrative claim here. If you've got claims against all these other people, you can go pursue them wherever, but I'm not interested in that."

Hearing Transcript 9/17/2015 [Bk. Dk. 586, page 145, lines 1-12].

Ms. Carlyon also indicated that IFA had cured its "standing issue" by obtaining a $2.117 million default judgment [Bk. Dk. 492-3 page 25] ("Default Judgment") against SCV in state court. Hearing Transcript 9/17/2015 [Bk. Dk. 586, page 140, line 7 – page 141, line 10]. The "standing issue" the Court was referring to in the April 2, 2015 hearing, of course, had nothing to do with whether IFA was or was not a creditor of SCV at the time of the alleged fraudulent post-petition transfer. So, IFA's efforts in obtaining the Default Judgment were likely completely misplaced. The real "standing issue" raised at the April 2, 2015 hearing was IFA's failure to prove that this court had subject matter jurisdiction. Indeed, the First Complaint was dismissed because IFA lacked "standing" (*i.e.*, a sufficient federal statutory basis to invoke federal jurisdiction over the claims being asserted by IFA against non-debtor defendants).  Any indication by Ms. Carlyon that it was following this Court's direction by going to state court to cure its "standing issue" obfuscates this Court's actual holding on April 2, 2015.

In addition, IFA's pleadings filed in connection with the stay relief hearing contain false and misleading assertions that this Court had previously *approved* state court as the *appropriate forum*. Motion for Relief [Bk. Dk. 492-1, page 9] ("This Court has previously indicated that state court is the *appropriate forum*, dismissing the Adversary #815-ap-01125-SC [sic] without prejudice.") (emphasis added); Reply in Support of Motion for Relief [Bk. Dk. 510, page 3, lines 16-17] ("[T]his Court previously *held* that IFA's claims are *properly brought before the state court . . . .*") (emphasis added). To the contrary, the Court never "held" that state court was a "proper" or "appropriate" forum. Ms. Carlyon is a competent attorney, and the Court did not and would not give her legal advice. Moreover, the Court was never even asked to make a declaratory ruling to determine whether a nonbankruptcy forum was "appropriate" for IFA's alleged claims.

9

1    The Court's discussion with counsel at the April 2, 2015 hearing, taken *in context*,

2    reflects that the Court dismissed without leave to amend because the bankruptcy court

3    is a court of limited jurisdiction, and because the bankruptcy court was not the

4    appropriate forum for IFA to bring state law causes of action against non-debtor

5    defendants without a sufficient connection to the bankruptcy estate. The Court made no

6    determination concerning what forum would be appropriate. Any assertion by IFA to

7    the contrary is inaccurate and misleading.

8    Ms. Carlyon's confusing and inaccurate remarks at the September 17, 2015

9    hearing resulted in an inaccurate record. Further, those inaccurate portions of the

10   record constitute *dicta* in the context of the stay relief hearing (a summary proceeding

11   where the Court is asked to determine whether "cause" exist to grant relief from the

12   automatic stay). The Court denied the motion for relief, holding that no such cause

13   existed. The Court observes that IFA's obfuscation of these issues has resulted in a

14   tremendous inefficiency and a duplication of judicial resources, bordering on

15   sanctionable conduct.

16   At the end of the September 17, 2015 hearing, the Court denied the Motion for

17   Relief. The Court's discussion with IFA's counsel and the Trustee's counsel on the record

18   at the September 17, 2015 hearing was raised by IFA during the December 17, 2015

19   hearing—again, Ms. Carlyon took portions of the transcript out of context.[7]

20

21   ─────────────
21   [7] At the December 17, 2015 hearing the Court pointed out that Ms. Carlyon had taken several portions of
22   the record out of context, "twisting what the transcript really says." Hearing Transcript 12/17/2016 [Adv.
     Dk. 55, page 31, lines 12-16].  Ms. Carlyon also represented to the Court at the December 17, 2015 hearing
23   that no full transcript of the April 2, 2015 hearing existed on the record. This statement by Ms. Carlyon
     was false.  In fact, she, herself, requested the entire transcript of the April 2, 2015 hearing and had, in fact,
     filed a portion of the transcript the morning of the December 17, 2015 hearing. When asked whether
24   judges' copies of the transcripts (filed hours before the December 17, 2015 hearing) were provided to the
     Court, Ms. Carlyon misstated the rule for delivery of judge's copies. Ms. Carlyon stated "[t]he rule requires
25   us to deliver it to your chambers by overnight mail which will be done." *Id*. at page 40, lines 19-20. This
     assertion is incorrect. *See* LBR 5005-2(d) ("A printed copy of any document filed with the court . . . must
26   be . . . served on the judge in chambers in the manner and not later than the deadline set forth in the
     Court Manual."); Court Manual Appendix F § 4.1 ("In no event shall the document arrive in chambers
27   later than 2 court days prior to the hearing."). Under Ms. Carlyon's interpretation, the Court would receive
     its copies two days after the hearing, which is nonsensical. Ms. Carlyon's misstatements are particularly
28   vexing because the Court relies on the affirmative representations made by the attorneys who appear
     before it.

At the September 17, 2015 hearing on the Motion for Relief, IFA was not seeking reconsideration of the Dismissal Order. IFA did not ask the Court to modify its prior Dismissal Order. The Court did not intend to (and did not in fact) grant relief from its prior order and findings at the April 2, 2015 hearing, which specifically determined that an adversary proceeding against multiple non-debtor defendants was not the "proper mechanism." Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 36, lines 7-8]. The Court has always left open the possibility for IFA to file an appropriate administrative claim. The Court did not foreclose the possibility that the administrative claim could be later converted into an adversary proceeding. *See* Hearing Transcript 9/17/2015 [Bk. Dk. 586, page 164, lines 17-22]. Accordingly, the Court entered an order [Bk. Dk. 583] on October 23, 2015, denying the Motion for Relief. That order was never appealed, and no Rule 59 or 60 motions were ever filed. No motions to clarify were ever filed.

### C.    The Second Adversary Proceeding

On October 20, 2015, instead of filing an administrative claim, IFA filed a new adversary proceeding. *See* Adversary Complaint [8:15-ap-01394-SC Adv. Dk. 1]. IFA filed an amended complaint on October 23, 2015 [Adv. Dk. 8] ("Second Complaint"). The gist of the Second Complaint was identical to the First Complaint—that Blanchard had received an approximate $950,000.00 fraudulent transfer which was avoidable under California Civil Code § 3439 and common law. Second Complaint, pages 6-7. These claims arose from the same common nucleus of operative fact which formed the basis of the First Complaint. Importantly, the jurisdictional basis for the Second Complaint was identical to that of the First Complaint, except that the Second Complaint asserted only non-core claims. The Court had, of course, dismissed the First Complaint without leave to amend for, among other things, lack of subject matter jurisdiction over IFA's state law claims against non-debtor entities, which lacked a sufficient connection with the bankruptcy estate. The Second Complaint contained jurisdictional assertions under 28 U.S.C. §§ 1334(b) and 157(c). *See* Second Complaint,

¶¶1,5. The Second Complaint purported to allege only non-core, "related to" claims against many of the same defendants named in the First Complaint. The only additional defendants listed in the Second Complaint were the Trustee and Meryton Management, Inc. ("Meryton") (a non-debtor).

While the Second Complaint did contain a request for allowance of an administrative claim in the amount of $948,920.00, as previously addressed by the Court, IFA may not bring their claim against the estate as an adversary proceeding but must bring it, if at all, by way of an administrative claim, which comports with the Bankruptcy Code, the Bankruptcy Rules, and this Court's prior rulings. *See* Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 36, lines 7-8] (Court found that an adversary complaint was not "the proper mechanism").

Several of the non-debtor defendants and the Trustee filed the Motions to Dismiss (defined *supra*). The Motions to Dismiss came on for hearing on December 17, 2015, at which time, the Court held oral argument and took the matter under submission.

For the reasons set forth below, issue preclusion bars the Second Complaint.

### III. Discussion

"Like all federal courts, the jurisdiction of the bankruptcy courts is created and limited by statute." *In re Wilshire Courtyard*, 729 F.3d 1279, 1284–85 (9th Cir. 2013) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir.2010)). Bankruptcy courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  "Proceedings 'arising under' title 11 involve causes of action created or determined by a statutory provision of that title." *Wilshire Courtyard*, 729 F.3d at 1285. "[P]roceedings 'arising in' title 11 are not those created or determined by the bankruptcy code, but which would have no existence outside of a bankruptcy case." *Id.* Finally, in determining "related to" jurisdiction, bankruptcy courts examine the connection between the proceeding and the bankruptcy estate. *Id.* at 1287

(citing *In re Pegasus Gold Corp*., 394 F.3d 1189, 1193 (9th Cir. 2005)). The test is different for pre-confirmation and post-confirmation estates, as discussed *infra*.

It is presumed that federal courts lack jurisdiction, which places the burden on the party asserting federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *In re Wilshire Courtyard*, 729 F.3d at 1284 ("The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction."); *Abrego Abrego v. The Dow Chemical Co*., 433 F.3d 676, 682–83 (9th Cir. 2006). "A federal court always has jurisdiction to determine its jurisdiction." *In re Bunyan*, 354 F.3d 1149, 1152 (9th Cir. 2004) (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).

Here, the Court previously dismissed the First Complaint based, in part, upon IFA's failure to meet its burden of establishing "related to" jurisdiction over non-debtor defendants. The Court recognized that IFA was asserting, at least in part, a right to payment on a debt allegedly owed by Blanchard. The Court did not foreclose IFA right to assert an administrative claim, but the Court did dismiss the adversary proceeding in its entirety as to all defendants without leave to amend. To the extent that the Second Complaint seeks to relitigate the issue of this Court's "related to" jurisdiction over non-debtor defendants, those arguments are precluded by the Dismissal Order. To the extent the Second Complaint seeks to assert an administrative claim against Blanchard's estate, that assertion is procedurally improper and is also precluded by the Dismissal Order.

IFA may not simply relitigate issues which have already been decided. In truth, IFA has filed what is essentially an amended complaint in violation of this Court's order which dismissed the First Complaint *without leave to amend*. Because the Court dismissed the First Complaint without leave to amend, the Second Complaint is barred. IFA may, of course, file (and has already filed) an administrative claim.

## A.    Issue Preclusion

The Court notes at the outset that it is not often that this Court is called upon to apply issue preclusion to its own orders. Nonetheless, the Court finds other preclusion principles, such as law of the case, not entirely satisfactory or applicable. The concept of direct estoppel seems most applicable, but that concept has been subsumed within the larger body of issue preclusion. As a result, the Court will apply issue preclusion, mindful that other preclusion principles may also apply.[8]

Issue preclusion applies to judicial determinations of subject matter jurisdiction. *See United States v. Van Cauwenberghe*, 934 F.2d 1048, 1057 (9th Cir. 1991) (citing *American Surety Co. v. Baldwin*, 287 U.S. 156, 166 (1932)). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Dismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the issue of subject matter jurisdiction in a second suit on the same claim. 18 Wright, Miller & Cooper, Federal Practice & Procedure § 4402, at 11. Relitigation of the question of whether the first court had subject matter jurisdiction is also precluded. *Id.* at § 4435 at 330 n. 7; *Id.* at § 4436 at 338–39 (stating that dismissal for lack of jurisdiction "permits a second action on the same claim that corrects the deficiency found in the first action[;] [however,] [t]he judgment remains effective to preclude re-litigation of the precise issue of jurisdiction . . . that led to the initial dismissal"). Generally, a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits of the underlying claim, but *is preclusive* on the issue of jurisdiction. *See* Rule 41(b); Moore's Federal Practice § 131.30[1][d][ii] ("If the court finds that subject matter jurisdiction is lacking, it will presumably dismiss the action. Such a dismissal would have no preclusive

---

[8] Judge Christopher Klein of the Eastern District of California, in his and co-authors' excellent article *Principles of Preclusion and Estoppel in Bankruptcy Cases*, stated that "[i]ncantations such as *res judicata*, collateral estoppel, judicial estoppel, or equitable estoppel, often lead courts into summary resolution of actions without being precise about the niceties of the doctrines being invoked." Christopher Klein, Lawrence Ponoroff, Sarah Borrey, *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr. L.J. 839, 839 (2005).

1  effect except as to the issue of the lack of subject matter jurisdiction of the court entering

2  the dismissal.") (citing Fed. R. Civ. P. 41(b)).

3  **B.    Applicable Preclusion Law**

4  The gist of the First Complaint involved IFA's assertion of California fraudulent

5  transfer claims against various parties, including the Debtor. The Court found that it

6  lacked "related to" jurisdiction over the non-debtor defendants. Under these

7  circumstances, and because the parties have not disputed the applicable law of

8  preclusion, the Court will apply California's issue preclusion standard. *See In re Cass*,

9  476 B.R. 602, 609 (Bankr. C.D. Cal. 2012) *aff'd*, No. ADV 12-1235-RK, 2013 WL

10  1459272 (B.A.P. 9th Cir. Apr. 11, 2013) *aff'd*, 606 F. App'x 318 (9th Cir. 2015) (holding

11  that where an action raising state law claims had been removed from California state

12  court, bankruptcy court should apply California preclusion law to determine the

13  preclusive effect of federal court's judgment). *Cf. Radovich v. L.P. YA Glob.*

14  *Investments, L.P.*, 570 F. App'x 203, 207 n.3 (3d Cir. 2014) ("Courts are divided on

15  whether to apply federal or state preclusion principles when considering the effect of a

16  judgment of a federal bankruptcy court sitting in 'related to' jurisdiction under 28 U.S.C.

17  § 1334.") (unpublished) (citations omitted). Although the federal and California issue

18  preclusion law are "virtually identical," the Court will apply California issue preclusion

19  law, and to the extent of any material variance between the two, the Court will apply the

20  more stringent principle, keeping in line with any overriding federal interests. *See In re*

21  *Cass*, 2013 WL 1459272, at *15 (B.A.P. 9th Cir. Apr. 11, 2013) *aff'd*, 606 F. App'x 318

22  (9th Cir. 2015).

23  Under California law, issue preclusion requires the following elements: (1) the

24  issue sought to be precluded from relitigation must be identical to that decided in a

25  former proceeding; (2) this issue must have been actually litigated in the former

26  proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the

27  decision in the former proceeding must be final and on the merits; and (5) the party

28  against whom preclusion is sought must be the same as, or in privity with, the party to

the former proceeding. *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990). Once these elements have been analyzed, courts should also consider policy considerations applicable to issue preclusion. *Id.* at 342–43.

### 1. Identical Issue

The Second Complaint asserts the very same jurisdictional basis that this Court previously found deficient—IFA's assertion that this Court has "related to" jurisdiction over non-core claims against non-debtor defendants. The Second Complaint alleges claims arising from the same transaction or occurrence as the First Complaint and it asserts precisely the same jurisdictional basis as the First Complaint except that the Second Complaint no longer purports to assert any core claims. This element is met because the jurisdictional issue is the same for both complaints.

The Court is mindful that the only potential analytical difference between IFA's assertion of "related to" jurisdiction in the First Complaint and IFA's assertion of "related to" jurisdiction in the Second Complaint is that the Plan was confirmed after the First Complaint was dismissed. The Ninth Circuit applies two different tests for determining pre-confirmation and post-confirmation "related to" jurisdiction. Despite the fact that two different jurisdictional tests are applied, the jurisdictional issue remains identical for issue preclusion purposes.

Prior to confirmation of a plan of reorganization, a bankruptcy court's "related to" jurisdiction encompasses "nearly every matter directly or indirectly related to the bankruptcy." *Wilshire Courtyard*, 729 F.3d at 1287 (citing *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005)). After confirmation, the scope of the bankruptcy court's "related to" jurisdiction is narrowed to include only matters that share a "close nexus" with the bankruptcy. *Id.* Under the "close nexus" test, a matter comes within "related to" jurisdiction if it affects the "interpretation, implementation, consummation, execution or administration of the confirmed plan." *Id.* (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166–67 (3d Cir. 2004)). Bankruptcy courts applying the "close nexus" test must consider "the whole

picture," including a "particularized consideration of the facts and posture of each case."

*Id.* at 1289. Unlike the broader "any effects" test applied pre-confirmation, the post-

confirmation "close nexus" test does not require a showing that the dispute has a

"demonstrable effect on the debtor or the plan of reorganization." *Id.* at 1288–89.  The

"close nexus" test may be satisfied if a matter affects interpretation of a confirmed plan,

including interpretation of the confirmation order. *Id.* at 1289.

To the extent that the two tests for "related to" jurisdiction might result in a lack

of total identity between the jurisdictional issue presented in the First Complaint and

the jurisdictional issue presented in the Second Complaint, such a difference is not

material.  In determining whether the issues are identical for preclusion purposes, the

courts in the Ninth Circuit look to the Restatement (Second) of Judgments, which

provides the following factors:

> Is there a substantial overlap between the evidence or argument to be
> advanced in the second proceeding and that advanced in the first? Does
> the new evidence or argument involve application of the same rule of law
> as that involved in the prior proceeding? Could pretrial preparation and
> discovery relating to the matter presented in the first action reasonably be
> expected to have embraced the matter sought to be presented in the
> second? How closely related are the claims involved in the two
> proceedings?

Restatement (Second) of Judgments § 27 (1982) cmt. c.; 18 Fed. Prac. & Proc. Juris. §

4417 (2d ed.) (noting that "Ninth Circuit allegiance to the Restatement test for defining

the issue for purposes of issue preclusion was reaffirmed in *Steen v. John Hancock Mut.*

*Life Ins. Co.*, 106 F.3d 904, 912 (9th Cir. 1997)").

Applying these factors, the Court concludes that IFA is barred from relitigating

the jurisdictional issue presented in the Second Complaint because that issue is identical

to the jurisdictional issue decided in the Dismissal Order. There is complete overlap

between the jurisdictional arguments made by IFA in the First Complaint and the

Second Complaint. IFA has not presented any new arguments to support "related to"

jurisdiction. Moreover, to the extent of any variance in the rule of law for determining

"related to" jurisdiction, that difference militates in favor of finding preclusion because

the pre-confirmation *Pacor* test is broader than the post-confirmation "close nexus" test. The claims arise from the same transactional nucleus of operative fact, and the jurisdictional basis for the Second Complaint is, again, IFA's assertion of non-core "related to" jurisdiction. The only difference between the jurisdictional analysis between then and now is that the Plan has been confirmed.[9] No amount of discovery will change that analysis. Therefore, under the "whole picture" of this proceeding, the Court finds that the jurisdictional issues are identical for preclusion purposes.

### 2.    Actually Litigated

"[T]he important question, at least for threshold purposes, is whether the [litigants] had the opportunity to present their entire case at the . . . hearing, not whether they availed themselves of the opportunity." *Lucido*, 51 Cal. 3d at 341, n.2. Here, IFA had a full opportunity to present, and in fact did present, their arguments as to why this Court had subject matter jurisdiction over the First Complaint. At the April 2, 2015 hearing, the Court fully examined "the whole picture" presented by the First Complaint and questioned Ms. Carlyon extensively to glean an understanding of the jurisdictional basis for IFA's claims. After doing so, the Court heard Mr. Richards's responsive arguments. The Court then gave Ms. Carlyon a final chance to address the jurisdictional issues raised by the Court.  The Court was not persuaded by Ms. Carlyon's arguments, and therefore the Court dismissed the First Complaint for lack of subject matter jurisdiction. Based upon the entire record, the issue of subject matter jurisdiction was actually litigated.

### 3.    Necessarily Decided

As defined by the *Lucido* court, "necessarily decided" means that resolution of the issue was not " 'entirely unnecessary' to the judgment in the initial proceeding." *Lucido*, 51 Cal. 3d at 342. Here, subject matter jurisdiction was necessarily decided and, in fact, was a central reason the Court dismissed the First Complaint. IFA was unable to

---

[9] Moreover, the Plan specifically provides for a $950,000.00 disputed claim reserve for IFA's administrative claim.

adequately demonstrate that the Court should extend its "related to" jurisdiction to the various non-debtor parties listed in the First Complaint. The only references to the Bankruptcy Code in the First Complaint were isolated references to §§ 105 and 523, which were not well-pled. The Second Complaint makes no attempt to cure these jurisdictional defects. The record reflects that the Court's ruling was predicated upon the Court's finding that it lacked subject matter jurisdiction. The Dismissal Order dismissed the entire action as to all defendants without leave to amend, but without prejudice to the underlying substantive disputes to be resolved in nonbankruptcy forums. The jurisdictional issue was, therefore, necessarily decided.

### 4.    Final Decision and On the Merits

As set forth below, the Dismissal Order was a final, appealable order, and while it was not on the merits of the underlying substantive claims of IFA, it was on the merits of the Court's jurisdictional determination.

### a.    Final Order

A dismissal for want of subject matter jurisdiction is a final order, unless certain "important policy" exemptions, such as lack of due process, apply. *See United States v. Van Cauwenberghe*, 934 F.2d 1048, 1059–60 (9th Cir. 1991) (citing *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 514–15 (1940) (sovereign immunity); *Kalb v. Feuerstein*, 308 U.S. 433, 438–44 (1940) (federal preemption)); *In re Verit Indus., Inc.*, 7 F. App'x 743, 745 (9th Cir. 2001) (jurisdictional determination not final where party not allowed to have its "day in court") (unpublished); *Chirila v. Conforte*, 47 F. App'x 838, 841 (9th Cir. 2002) (jurisdictional findings not preclusive where entered by default) (unpublished). *See also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4428, at 274–78 (suggesting factors for finality including the jurisdictional nature of the court involved, the importance of the specific jurisdictional limit that has been transgressed, the clarity of the error, the quality of the procedures available in the first court, the impact of the case on the general values of preclusion, and whether the issue has actually been litigated).

Notably, none of the "important policy" exceptions to finality, such as lack of due process, thwart the finality of the Dismissal Order. The motions to dismiss the First Complaint directly addressed this Court's lack of jurisdiction over the claims. IFA was given several opportunities to address these arguments both in briefing and during oral argument. Indeed, during the April 2, 2015 hearing, the Court specifically asked for Ms. Carlyon to address the Court's jurisdictional concerns before entering a final order.  IFA was given a full and fair opportunity to be heard on the question of this Court's subject matter jurisdiction before the Court dismissed the First Complaint. The Dismissal Order was never appealed. No Rule 60(b) or Rule 59 motions were ever filed. Under these circumstances, both California and federal law find that the Dismissal Order is a final order for issue preclusion purposes. *Cf. In re Turner*, 204 B.R. 988, 992 (B.A.P. 9th Cir. 1997) (noting the differences between California and federal law where order is on appeal).

The Court notes other tests for finality of bankruptcy court orders, which the Dismissal Order meets. *See, e.g., Elliott v. Four Seasons Props. (In re Frontier Props., Inc.)*, 979 F.2d 1358, 1363 (9th Cir. 1992) (adopting two-prong test for finality where order: 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed). Here, the Dismissal Order finally determined the discrete issue of this Court's subject matter jurisdiction over the non-debtor defendants. This ruling seriously affected the substantive rights of all parties involved, vis-à-vis this bankruptcy estate because it foreclosed further adversary proceedings based upon the same purported jurisdictional assertions made in the First Complaint.

At the December 17, 2015 hearing, IFA's counsel stated that she believed the Dismissal Order was not final because of the phrase "without prejudice" contained in the Dismissal Order. Hearing Transcript 12/17/2015 9:52 a.m. This assertion is disingenuous and misses the point. The dismissal of the entire action, even if dismissal is without prejudice, results in a final, appealable order. *See Nascimento v. Dummer*, 508 F.3d 905, 910 n.4 (9th Cir. 2007) (citing cases and noting that dismissal of an

action without prejudice is final and appealable). Further, IFA's counsel was present at the April 2, 2015 hearing when the Court specifically acknowledged that dismissal of the First Complaint was *without leave to amend*. *See* Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 106, page 6, lines 2-5] (finding "there's no way this complaint can be amended to resolve the difficulties that the plaintiff would have in securing jurisdiction and standing"). The Court supported this ruling with findings that IFA failed to point to any aspect of the Bankruptcy Code which gave it standing to "undo" transfers under state fraudulent transfer law. Ms. Carlyon provided no basis, and the Court found none. Moreover, the April 2, 2015 record reflects that the Court found that it lacked "related to" jurisdiction over the non-debtor defendants. The Court specifically gave Ms. Carlyon several opportunities at the April 2, 2015 hearing to change the Court's mind before rendering the final decision. *See* Hearing Transcript 4/2/2015 [8:14-ap-01242-SC Dk. 108, page 35, lines 15-19] ("Now that you've heard my tentative. Do you want to respond to my tentative? I think I'm going to restate my tentative and uphold it. But before I do – because it's not yet the final order – I want to hear from you."). The Court found Ms. Carlyon's arguments unpersuasive.

In addition, where, as here, IFA has interpreted the "without prejudice" phrase contained in the Dismissal Order to mean that the order was not final, finality is determined by the trial court's intent, which is in turn based upon the entire record and the language of the order itself. *See Nat'l Distribution Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 434 (9th Cir. 1997); *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 870 (9th Cir. 2004) ("We look beyond the dismissal order and read the entire record to determine what effect the court intended its order to have.") (internal quotation marks and alterations omitted). In *National Distribution Agency*, the Ninth Circuit considered whether an order granting a motion to dismiss was final. The District Court's order contained the following verbiage: "IT IS HEREBY ORDERED that the motion to dismiss of defendant Nationwide Mutual Insurance be GRANTED. The Court may amend or amplify this order with a more specific statement

1  of the grounds for its decision." The Ninth Circuit noted that both sentences in the order

2  raised questions as to the finality of the order. *Id.* at 434.

3      Here, the record at the April 2, 2015 hearing and the language of the Dismissal

4  Order reflect that the dismissal was a full adjudication of all the issues, dismissing the

5  entire action for lack of subject matter jurisdiction. The language of the Dismissal Order

6  itself states that "the *matter* is dismissed *in its entirety as to all defendants* without

7  prejudice." [Adv. Dk. 97] (emphasis added). The Court expressly dismissed the First

8  Complaint without leave to amend on the record at the April 2, 2015 hearing. The Court

9  closed the adversary proceeding a month later, on May 21, 2015. *See* Docket entry

10  closing case [8:14-ap-01242-SC Adv. Dk. 103].

11      IFA never objected to the form of the order, even though IFA's counsel was given

12  notice of the form of the order several days before its entry. *See* Notice of Lodgment

13  [8:14-ap-01242-SC Adv. Dk. Adv. Dk. 96]. None of the parties present at the April 2,

14  2015 hearing—all of whom were served with a proposed, identical version of the

15  Dismissal Order—ever objected to the form of the Dismissal Order or sought

16  clarification of the Dismissal Order.

17      Although the Dismissal Order reflects the phrase "without prejudice," the

18  parameters of that phrase were also specifically discussed between the Court and Ms.

19  Carlyon at the April 2, 2015 hearing. IFA sought clarification that the dismissal would be

20  without prejudice to IFA bringing lawsuits *in other forums*. Hearing Transcript

21  4/2/2015 [8:14-ap-01242-SC Dk. 106, page 5, lines 12-16]. With respect to the adversary

22  proceeding, however, the Dismissal Order ended the entire proceeding fully and finally.

23      At the December 17, 2015 hearing, IFA's counsel cited two cases in support of her

24  arguments that the Dismissal Order was not final. Neither supports IFA's assertion. The

25  case of *In re Ditter*, 205 B.R. 213, 215–16 (B.A.P. 9th Cir. 1996) was cited by Ms. Carlyon

26  for the proposition that a dismissal without prejudice is not a final judgment. *Ditter*

27  does not sweep so broadly. *Ditter* stands for the unremarkable proposition that "[a]

28  *voluntary dismissal* without prejudice is ordinarily not a final judgment from which the

plaintiff may appeal." *In re Ditter*, 205 B.R. at 215 (quoting *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995)) (emphasis added). Ms. Carlyon omitted this critical detail in her oral argument before this Court on December 17, 2015. This distinction is obviously important.[10] In this case, of course, the Dismissal Order was an *involuntary* dismissal of the entire proceeding as to all defendants without leave to amend.

IFA's counsel also cited the United States Supreme Court's decision in *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1694–95 (2015), where the Supreme Court held that denial of confirmation is not a final, appealable order. Contrary to IFA's arguments, *Bullard* actually bolsters this Court's determination that the Dismissal Order was a final, appealable order. In *Bullard*, the Supreme Court noted that "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Id.* at 1692 (citing *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)). Here, the Dismissal Order terminated the entire proceeding as to all defendants and finally disposed of all issues brought before the bankruptcy court. The dismissal was entered without leave to amend, and the adversary proceeding was closed promptly thereafter. IFA never sought to reopen the closed adversary proceeding, which tends to indicate that IFA itself regarded the dismissal as final. A dismissal and closing of an adversary proceeding significantly alters the legal relationship between the parties vis-à-vis the bankruptcy case, an indicia of finality highlighted by the Court in *Bullard. See Bullard v. Blue Hills Bank*, 135 S. Ct. at 1695.

In summary, the Dismissal Order is final for issue preclusion purposes. It was never appealed, and the time to appeal has passed. No Rule 60(b) or Rule 59 motions were ever filed. No requests to clarify the order were ever made. The fact that IFA never

---

[10] The Court would normally consider sanctioning counsel for violating the duty of candor by mischaracterizing legal authority; however, the Court will not issue sanctions at this time. The Court may not forgive future occurrences.

1   sought to reopen the closed adversary proceeding also reflects that IFA regarded the

2   Dismissal Order itself as a final order.

3                                           **b.      On the Merits**

4            A dismissal for lack of subject matter jurisdiction is not "on the merits" of "the

5   underlying substantive question"; however, it is "on the merits" of the "issues necessary

6   for the determination of jurisdiction." *See Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d

7   759, 767 n.11 (9th Cir. 2007) (applying California preclusion law); *Boone v. Kurtz*, 617

8   F.2d 435, 436 (5th Cir. 1980) (holding that dismissal of a complaint for lack of

9   jurisdiction does not adjudicate the merits of the substance of the asserted claim, but

10  that "it does adjudicate the court's jurisdiction, and a second complaint cannot

11  command a second consideration of the same jurisdictional claims.") (citations

12  omitted); *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 469 (5th Cir. 2013) ("Although

13  a jurisdictional ruling is technically not an adjudication on the merits, it has long been

14  the rule that principles of *res judicata* apply to jurisdictional determinations—both

15  subject matter and personal.") (citations and quotation marks omitted); *Sandy Lake*

16  *Band of Mississippi Chippewa v. United States*, 714 F.3d 1098, 1102–03 (8th Cir. 2013)

17  (citations omitted); *see also* 18A Fed. Prac. & Proc. Juris. § 4435 (2d ed.) ("A dismissal

18  for lack of subject-matter jurisdiction . . . does not preclude a second action on the same

19  claim in a court that does have subject-matter jurisdiction, but does preclude relitigation

20  of the question whether the first court had subject-matter jurisdiction.").

21           Here, the Court's Dismissal Order was on the merits of the question of the Court's

22  jurisdiction.  The Court determined at the April 2, 2015 hearing that its "related to"

23  jurisdiction did not extend to the claims asserted by IFA against the various non-debtor

24  defendants. This jurisdictional determination is preclusive. *See Comer*, 718 F.3d at 469.

25  The Dismissal Order was not, of course, "on the merits" of "the underlying substantive

26  question," and IFA remains free to seek a distribution from the $950,000.00 disputed

27  claims reserve by filing an appropriate administrative claim (and, indeed, IFA has

28  already filed an application for allowance of an administrative claim). The Court has

made it specifically clear that IFA will not be allowed to short-cut any procedural

mechanisms contained in Bankruptcy Rules 3001, *et seq*. by simply asserting their

administrative claim by way of an adversary complaint—IFA must follow well-

established procedural rules if they wish to seek their right to payment from this estate.

### 5.    Same Party or in Privity with Party in Former Proceeding

In this case, preclusion is being applied against IFA, the same plaintiff in the

former proceeding. This requirement is met.

The Court notes that the only parties which IFA has added to its complaint since

the dismissal of the First Complaint are the Trustee and Meryton (a non-debtor). Even if

preclusion did not apply, the addition of these parties would not cure the original

jurisdictional defect, using either the "any effects" test or the "close nexus" test for

"related to" jurisdiction.

The Court notes that while Meryton is listed as a defendant, none of the claims

for relief are directed against Meryton. Likewise, the addition of the Trustee as a

defendant does nothing to improve IFA's jurisdictional assertions in the Second

Complaint. The Trustee merely succeeded to Blanchard's estate, and IFA's inclusion of

the Trustee in the Second Complaint does not alter the preclusion analysis. *See Taylor

v. Sturgell*, 553 U.S. 880, 894 (2008) (noting that preclusion may bind certain

nonparties, including successors to property, bailees, and assignees, based upon their

substantive legal relationship to the party to the judgment). The addition of these

defendants, under the "whole picture" of the Second Complaint, does not give rise to a

sufficient connection or "close nexus" with this the bankruptcy estate or otherwise cure

the original jurisdictional defect upon which this Court based the Dismissal Order.

### 6.    Policy Considerations

Even after finding that the threshold requirements are met, California courts will

not give preclusive effect to a previously litigated issue unless they find that the public

policies underlying the collateral estoppel doctrine would be furthered by application of

preclusion to the particular issue before the court. *See Lucido*, 51 Cal. 3d at 342. The

California Supreme Court has identified three policies underlying the doctrine of collateral estoppel: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id.* at 343. Here, the public's confidence in the bankruptcy system would be undermined if this Court would allow relitigation of the question of subject matter jurisdiction. Further, this Court's power to interpret and enforce its own orders is a salient policy consideration, which would be undermined if relitigation of already-decided issues were re-opened.

## IV.    Conclusion

For the reasons set forth above, this adversary proceeding is DISMISSED in its entirety, without leave to amend, and without prejudice to IFA filing an administrative claim in this bankruptcy case (which the Court notes has already been done).

###

Date: January 22, 2016

Scott C. Clarkson
United States Bankruptcy Judge